STATE of Tennessee, Appellee,

v.

Clifford Louis TAYLOR, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Dec. 3, 1981.

Permission to Appeal Denied by Supreme Court Feb. 22, 1982.

**44**

W. Otis Higgs, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Rhona J. Cartwright, Asst. Atty. Gen., Nashville, Thomas D. Henderson, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

TATUM, Judge.

The defendant, Clifford Louis Taylor, was convicted of two counts charging aggravated kidnapping and sentenced to serve 30 years in the penitentiary on each of these charges. He was also convicted of armed robbery with punishment fixed at a term of 15 years in the State penitentiary. Upon a finding that the defendant was a habitual criminal, the armed robbery sentence was enhanced from 15 years to life. The two sentences for aggravated kidnapping were ordered by the trial judge to be served concurrently with each other but consecutively to the enhanced armed robbery sentence. The trial judge further ordered that the three sentences imposed in this case be consecutive to a 25-year sentence for a previous conviction for which the defendant was on parole when he committed these offenses.

On this appeal, the defendant has assigned 12 issues for review on various grounds. After considering the issues, we have determined that the judgments of conviction must be affirmed.

Two of the defendant's issues attack the sufficiency of the evidence. The State's evidence establishes that at approximately 6:30 P.M. on February 22, 1980, the defendant and a companion entered the private apartment of Mrs. Loretta Roby and forced Mrs. Roby and her 9-year old daughter, at gunpoint, to drive them to the Memphis Area Teacher's Credit Union, where Mrs. Roby held a managerial position. Upon arrival, the defendant forced Mrs. Roby to accompany him inside the credit union office while the defendant's companion remained in Mrs. Roby's automobile with her daughter. Inside the office, the defendant forced Mrs. Roby to open safes from which the defendant took approximately $30,000. While inside the credit union office, the defendant picked up a stack of travelers checks but discarded them when he was told by Mrs. Roby that they could be traced through serial numbers. After taking the money, the two men forced Mrs. Roby to drive them to an apartment building where they left Mrs. Roby and her daughter.

Separately, both Mrs. Roby and her daughter identified the defendant from an array of police photographs. Both also positively identified the defendant at trial. The travelers checks handled by the defendant during the robbery bore the defendant's palm print and a fingerprint.

The defendant did not testify and the only defense witness was his live-in girlfriend, Alice Fay Clark. She testified that she left her son and the defendant at her home approximately 6:00 P.M. on the day of the crime and that both were there when she returned. Her testimony as to the time of her return was somewhat conflicting but we glean that she was estimating her return home at sometime between 8:00 P.M. and 8:20 P.M. Mrs. Roby had testified that she was in the company of the defendant from approximately 6:30 P.M. until approximately 8:00 P.M. Ms. Clark did not know whether the defendant had left her home between 6:00 P.M. and the time she returned with her girlfriend.

■ The evidence of the defendant's guilt is overwhelming and it is not clearly contradicted. There is abundant evidence upon which a rational jury could be convinced beyond a reasonable doubt of the defendant's guilt. The evidence meets the standard required by Rule 13(e), T.R.A.P. and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ The defendant assigns issue that the court erred in allowing the District Attorney General to argue with and ridicule Ms. Clark. He argues that the Assistant Dis-

trict Attorney harrassed the witness by questioning her about her failure to testify at the preliminary hearing held in this case. The record reflects that the Assistant District Attorney did not question the witness concerning the preliminary hearing but that these questions were asked by defense counsel. We find no improper cross examination of this witness.

■ The defendant complains that the trial court erred in allowing an officer from the Memphis Police Department Bureau of Identification to refer to his "records concerning" the defendant. He was allowed to testify that he had the defendant's fingerprints, palm prints, and photographs in his "records" and the defendant insists that the jury would infer from this terminology that he had a previous criminal record. The dates when the prints and photographs were taken were not disclosed to the jury and there is nothing upon which the jury could reasonably conclude that any part of the record was compiled before the defendant's arrest in this case. We find no error in this regard.

■ The defendant next contends that the trial court erred in permitting Mrs. Roby and her daughter to make an in-court identification of him. On cross examination, both of these witnesses testified that they had never been inside a courtroom previous to this case and requested the Assistant District Attorney General to familiarize them with it before they testified. They entered the courtroom during a recess with the Assistant District Attorney who familiarized them with the layout of the courtroom. Both testified that they did not see the defendant in the courtroom during this visit and that they were not told where the defendant would be sitting. The evidence is uncontradicted that if the defendant was, in fact, in the courtroom, he was not observed by either witness. We have noted no evidence that the defendant was actually in the courtroom during this time. The defendant's brief ignores Rule 27(g), T.R.A.P. This issue is overruled.

■ The defendant next complains that the trial judge erred in allowing evidence that the child witness, Terri Roby, made a pretrial identification of a photograph of the defendant as one of the kidnappers and robbers. Evidence was admitted without objection that the child selected a photograph of the defendant from an array of photographs. He now complains that the evidence was not admissible because the remaining photographs in the array were not produced at trial. No pretrial motion to suppress this evidence was made and no contemporaneous objection was made when the evidence was offered. The defendant waived any right to object. *State v. Wilson*, 611 S.W.2d 843 (Tenn.Cr.App.1980) and the cases therein discussed.

■ The defendant next asserts that the trial judge erred in sustaining the State's objection to a question asked Policeman Nelms. The question sought to show a prior contradictory statement. The objection was sustained by the trial judge because the proper foundation had not been laid.

Mrs. Roby had testified on direct that she talked to several policemen the night of the crimes and that one particular officer, whose name she did not recall, "spent a lot of time" talking with her. Subsequent to the date of the crime, a different officer did most of the interviewing. None of these officers were particularly identified.

During her testimony at trial, she said that the defendant was wearing a stocking mask when he entered her apartment. After she and her daughter began screaming, the defendant pulled the mask "up on top of his head," thereby permitting her to observe his face. Upon cross examination, Mrs. Roby was asked and answered as follows:

"Q. Alright, Mrs. Roby, on the night that this robbery occurred, did you tell the police that the tall man that robbed you took his mask off?
A. I don't recall. I guess I did. I'm not sure. I—suddenly, they just had me just talking freely of everything that happened."

On cross examination, defense counsel asked Officer Nelms, who was one of the policemen who talked with Mrs. Roby on the night the crime was committed, the following question:

"Q. Did she (Mrs. Roby) say that these men took the mask off?" ·

 The foundation laid for the question asked Officer Nelms does not meet the requirements discussed in *James v. State*, 506 S.W.2d 797 (Tenn.Cr.App.1973). In the *James* case this court, speaking through Judge Oliver, discussed at length the requirements for laying a proper foundation before impeaching a witness by proving a prior contradictory statement. In summary, the law requires that the witness's attention be directed to a particular conversation by inviting his attention to the time and place of the conversation and to the person to whom the contradictory statement was made. The witness's veracity should not be impugned until circumstances calculated to refresh his memory are given to him to afford him an opportunity to recollect the facts and make such explanation as the circumstances may require. The words used that are contradictory of the trial testimony or their substance must be stated to the witness.

Mrs. Roby's attention was not directed to a particular conversation that she had with any one of the several police officers who questioned her that night. The words used or their · substance was not quoted. It is obvious from her answer to the general and broad question propounded, that her memory was not refreshed. She was given no circumstance calculated to refresh her memory. Therefore, we agree with the trial judge's ruling that the proper foundation had not been laid.

 In his next issue, the defendant says that the jury verdict indicates passion and prejudice against him because his punishment was fixed at 30 years for each of the aggravated kidnapping cases and only 15 years for the armed robbery case. The defendant assigns no authority for his insistence. In this State, the fixing of punishment is within the province of the jury.

The sentences are within the range of punishment fixed by statute and are in no way indicative of passion or prejudice. *Howard v. State*, 506 S.W.2d 951, 955 (Tenn.Cr.App. 1973).

 In another issue, the defendant asserts that the habitual criminal statute is unconstitutional. He asserts that the District Attorney General "has complete arbitrary discretion in charging a person" under the Statute. This does not render the statute unconstitutional. See *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *McPherson v. State*, 562 S.W.2d 210 (Tenn.Cr.App.1977); *Marsh v. State*, 561 S.W.2d 767 (Tenn.Cr.App.1977). This issue is without merit.

The defendant assigns issue that the trial court erred in refusing to recuse itself and transfer the case to another Division of Criminal Court for a trial. The defendant was tried in Division VIII of the Criminal Court of Shelby County. In his brief, the defendant states that by local rule of court, major violators are prosecuted only in Division VIII and these persons have prior convictions or prior criminal activity. The defendant argues that a person serving on a jury in Division VIII might be aware of the local rule of court and infer that a defendant had a prior criminal record.

 The alleged rule of court is not incorporated in the record. This court cannot judicially know the existence and terms of all local rules of court in this State and will not notice them unless they are proved and incorporated in the record. *Brewer v. State*, 215 S.W.2d 798 (Tenn.1948). We cannot consider this issue.

 Finally, the defendant makes a constitutional attack against The Class X Felonies Act of 1979 (T.C.A. §§ 39–5401—39–5404, inclusive). He asserts that the Act is not in compliance with the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution.

T.C.A. § 39–5402 specifies eleven offenses as Class X Felonies. These offenses

are particularly heinous and dangerous to human life. T.C.A. § 39–5403 provides that these particular offenses are determinate in nature, not subject to reduction for good, honor or incentive or other sentence credit of any sort, shall terminate only after service of the entire sentence, and shall not be subject to pretrial diversion.

The Act observes the fundamental principle of uniformity; all persons and entities under like circumstances and conditions are treated alike. See *Leeper v. Texas*, 139 U.S. 462, 11 S.Ct. 577, 35 L.Ed. 225 (1891); *Genesco, Inc. v. Woods*, 578 S.W.2d 639 (Tenn.1979). The distinction between Class X crimes and other crimes is rational and reasonable. The Act does not deny equal protection under the law.

The defendant insists that the Act does not allow for mitigating factors during consideration of sentencing and requires service of the entire sentence. Without finding that these assertions, if correct, would invalidate the statute, we observe that they are not correct. The various statutes, setting punishments for the offenses designated as Class X felonies, provide a wide range between the minimum and maximum sentences that a jury might impose, thus permitting the jury to consider mitigating factors in fixing punishment. Also, the Act does not require that the entire sentence imposed be actually served. T.C.A. § 40–3640 (Supp.1980), provides that a person convicted of a Class X felony shall be eligible for consideration for relief classification status after serving 40% of his sentence or 30 years, whichever is less.

He also argues that due process is violated because one convicted of a Class X felony is not entitled to pretrial diversion. The fact that the legislature did not choose to authorize pretrial diversions for the serious and dangerous offenses specified as Class X felonies in no way renders The Class X Felony Act unconstitutional. Neither the Fourteenth Amendment nor any other constitutional provision requires the legislature to grant pretrial diversion for the most serious and dangerous offenses when the relief is authorized for the most moderate ones.

We do not find that the Class X Felony Act violates either the due process or the equal protection clause of the United States Constitution.

The judgments of the trial court are affirmed.

WALKER, P. J., and CORNELIUS, J., concur.