IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 28, 2000

## CLIFFORD L. TAYLOR v. STATE OF TENNESSEE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 99-1314-II      Carol L. McCoy, Chancellor**

————————————

**No. M1999-02418-COA-R3-CV - Filed July 26, 2001**

————————————

An inmate of the Tennessee Department of Correction sought a declaratory judgment that the Department had incorrectly calculated his sentence. The trial court dismissed the petition, finding no improper calculation. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Clifford L. Taylor, pro se, Tiptonville, Tennessee.

Paul G. Summers, Attorney General, Michael E. Moore, Solicitor General, Rae Oliver, Assistant Attorney General, for the appellees, State of Tennessee, et al.

### OPINION

Clifford L. Taylor, an inmate of the Tennessee Department of Correction, filed a declaratory judgment action in the Chancery Court for Davidson County seeking a declaration that the Department had improperly calculated his sentence. The trial court dismissed his petition, and he now asks this court to:

order Tennessee Department of Correction to re-calculate his life sentence without the Class X enhancement factors, including jail time, starting from the day he entered the Department of Correction. That the Department of Correction rescind the Class X waiver petitioner signed in 1986 and that the Department utilize all authorized sentence reduction credit laws that were applicable/authorized during his period of his incarceration in their recalculation process . . .

Mr. Taylor was convicted on December 12, 1980, for offenses committed on February 22, 1980. Mr. Taylor's convictions and sentences were summarized by the Court of Criminal Appeals in *State v. Taylor*, 628 S.W.2d 42, 44 (Tenn. Crim. App. 1981):

> The defendant, Clifford Louis Taylor, was convicted of two counts charging aggravated kidnapping and sentenced to serve 30 years in the penitentiary on each of these charges. He was also convicted of armed robbery with a punishment fixed at a term of 15 years in the State penitentiary. Upon a finding that the defendant was a habitual criminal, the armed robbery sentence was enhanced from 15 years to life. The two sentences for aggravated kidnapping were ordered by the trial judge to be served concurrently with each other but consecutively to the enhanced armed robbery sentence. The trial judge further ordered that the three sentences imposed in this case be consecutive to a 25-year sentence for a previous conviction for which the defendant was on parole when he committed these offenses.

The convictions and sentences were upheld on direct appeal and in subsequent proceedings, and have not been modified.[1] In addition, Mr. Taylor sought to have his parole eligibility dates recalculated by the Parole Eligibility Review Board after passage of the Criminal Sentencing Reform Act of 1989. Under that Act, the Board was authorized to amend the parole eligibility date of a habitual criminal convicted prior to the Act to the date he or she would have received if convicted after the Act.[2] Tenn Code Ann. § 40-35-602 [repealed]. The Board denied Mr. Taylor an amended release eligibility date, and this court affirmed the trial court's dismissal of Mr. Taylor's attempt to gain judicial review of that denial. *Jeffries, et al. v. State*, No. 01A01-9406-CH-00281, 1995 WL 1689 at *1 (Tenn. Ct. App. Jan. 4, 1995) (perm app. denied May 8, 1995) (Mr. Taylor was one of three inmates seeking relief).

At the time of Mr. Taylor's offenses and convictions, robbery with a deadly weapon and aggravated kidnapping were both Class X felonies. Tenn. Code Ann. §§ 39-1-702(5) [repealed] and 39-2-301 [repealed]. Persons who committed such offenses on or after September 1, 1979, were tried and sentenced under the Class X Felonies Act of 1979. Tenn. Code Ann. § 39-1-704 [repealed].

Regarding Mr. Taylor's Class X Felony convictions, the Court of Criminal Appeals stated:

---

[1] *State v. Taylor*, 628 S.W.2d at 47; *Taylor v. State*, 1987 WL 13689 (Tenn. Cr. App. July 15, 1987) (denial of postconviction relief); *Taylor v. State*, 1989 WL 34129 (Tenn. Crim. app. April 12, 1989) (dismissal of petition for habeas corpus, which the trial court treated as a petition for postconviction relief); *Taylor v. State*, 1989 WL 126732 (Tenn. Crim. App. Oct. 25, 1989) (dismissal of postconviction petition); *State v. Taylor*, 1994 WL 673138 (Tenn. Crim. App. Nov. 30, 1994 (dismissal of petition for postconviction relief); *Taylor v. State*, 1997 WL 284710 (Tenn. Crim. App. May 30, 1997) (dismissal of petition for writ of habeas corpus).

[2] The Act was amended in 1993 to prevent the Board from reviewing parole eligibility dates of habitual criminals whose triggering offense was an offense against the person. Tenn Code Ann. § 40-35-602 [repealed].

T.C.A. § 39-5402[3] specifies eleven offenses as Class X Felonies. These offenses are particularly heinous and dangerous to human life. T.C.A. § 39-5403 provides that these particular offenses are determinate in nature, not subject to reduction for good, honor or incentive time or other sentence credit or any sort, shall terminate only after service of the entire sentence, and shall not be subject to pretrial diversion.

*State v. Taylor*, 628 S.W.2d at 46-47.

In the case before us now, Mr. Taylor refers to the consequences of sentencing as a Class X felon as "enhancements" and asserts his sentence was not subject to such "enhancements" because: (1) he was not brought to trial within 150 days of his indictment as required by Tenn. Code Ann. § 40-18-103, and (2) the sentencing court failed to denote Class X status on his judgment as dictated by Tenn. Code Ann. § 40-28-301[repealed].

The trial court dismissed the petition, denying Mr. Taylor the relief he sought stating, in pertinent part:

In *State v. Wilcoxson*, 772 S.W.2d 33 (Tenn. 1989), the Supreme Court stated that the Class X felony law was enacted, "not to benefit a defendant, but to identify and define specific offenses against society for which enhanced penalties and expedited proceedings were prescribed so as to assure swift and certain punishment for their violation."

In dismissing Mr. Taylor's argument that the lack of a speedy trial precluded a Class X felony sentence, the trial court relied upon *Franklin v. State*, 1984 LEXIS 2549 ( Tenn. Crim. App. August 6, 1984). In *Franklin*, the inmate asserted that because he was not brought to trial within 150 days of his arraignment, his offense should not be considered a Class X felony. Mr. Taylor makes essentially the same argument. The Court of Criminal Appeals, in *Franklin*, held that the state's failure to bring a Class X felon to trial within 150 days following his arraignment did not "warrant or authorize the removal of a defendant's Class X status just because the time requirement of the statute was not complied with, regardless of the reason for noncompliance." *Id*. Tenn. Code Ann. § 40-18-103, the statute which provided the 150 day directive, also specifically stated that failure to conform to that requirement did not require the state to release a defendant from custody or to dismiss the charges against him. Based upon *Franklin*, the trial court determined that such a failure similarly does not require that a defendant be sentenced other than as a Class X felon. We agree with the trial court's holding and analysis; the 150 day requirement in Tenn. Code Ann. § 40-18-103 is not mandatory, but is directory only. *Id*. Failure to meet the requirement does not change the fact Mr. Taylor was convicted of a Class X felony and does not affect the sentence imposed. We affirm the trial court on this issue.

---

[3]Tennessee Code Annotated sections were renumbered after the quoted opinion was released. For this opinion, we shall cite to the Code, as renumbered.

Mr. Taylor's second claim rests on Tenn. Code Ann. § 40-28-301(b) [repealed] which provided that any person convicted of a Class X felony was to have all his official files stamped to signify that status. Mr. Taylor alleges that the sentencing court failed to so stamp his judgment and that by this failure the sentencing court indicated that Mr. Taylor "was not receiving an enhanced sentence based on the state's failure to meet the time requirement mandated by law." Again, Mr. Taylor is essentially asserting that he was not sentenced as a Class X felon. Such is simply not the case.

The Class X Felonies Act carried specific consequences for persons "convicted of a Class X felony." Tenn. Code Ann. § 39-1-703 [repealed]. The service of sentence and release eligibility of persons convicted of a Class X felony were exclusively governed by the Act. Tenn. Code Ann. § 39-1-704 [repealed]. Mr. Taylor was convicted of offenses which at the time required sentencing under the Class X Felonies Act. *Id.* The fact that his file was not marked with an X does not change his conviction, his sentence, or the trial court's judgment. Having been convicted of Class X felonies, Mr. Taylor was subject to the "enhancements" to his sentence required by law.[4] We share the trial court's conclusion on this issue.

Mr. Taylor raised a third issue after the trial court heard the Department's motion to dismiss, but before it entered its order. Mr. Taylor sought to amend his complaint to argue that when he was determined to be a habitual criminal, the sentence for the underlying offense, armed robbery, became null and void. He contends that the enhancement of his sentence resulting from the habitual criminal finding precludes any enhancement from the triggering offense's Class X felony designation. The trial court determined that the motion to amend was moot but that even if the court were to consider the amendment, the complaint would require dismissal.[5]

Mr. Taylor is correct in his assertion that once he was sentenced as a habitual criminal, the underlying sentence for the triggering offense became void. "[H]abitual criminality is a status, not an offense; and its finding calls for an enhancement of the punishment for the new offense . . . to life imprisonment." *Meade v. State*, 484 S.W.2d 366, 368 (Tenn. Crim. App. 1972). In other words, the habitual criminal statutes recognized prior criminal convictions and used them as a means to enhance the present sentence for the triggering offense. Mr. Taylor received one sentence for his armed

---

[4]The Class X Felonies Act was repealed in 1989 by the Sentencing Reform Act of 1989. Tenn. Code Ann. §§ 40-35-101 *et seq.* Additionally, prior to July 1, 1983, those convicted of Class X felonies were not entitled to sentence reduction for good, honor, incentive, or other sentence reduction credits. In 1983, the General Assembly adopted Public Chapter 400, which made a person convicted of a Class X felony eligible to receive prisoner performance credits to reduce the expiration date of his or her sentence, but such credits did not affect the release classification eligibility date. Tenn. Code Ann. § 40-28-301(I) [repealed]. In 1985, new legislation was adopted which allowed inmates convicted of Class X felonies to become eligible to earn sentence reduction credits by signing a written waiver of his right to serve his sentence under the law in effect at the time of his offense. Tenn. Code Ann. § 41-21-236(c)(1990). Mr. Taylor's request for relief in this court, quoted earlier, indicates he signed such a waiver.

[5]The trial court interpreted Mr. Taylor's amendment as a claim of double jeopardy and dismissed on the basis of *Washington v. Harrison*, No. 02C01-9703-CC-00097, 1998 Tenn. Crim. App. LEXIS 146 (January 30, 1998) (procedure for habitual designation and setting of punishment does not violate double jeopardy.)

robbery conviction, "albeit a much more severe punishment based upon his designation as a habitual criminal." *Washington v. Harrison*, No. 02C01-9703-CC-00097, 1998 WL 32680 at *1 (Tenn. Crim. App. Jan. 30, 1998) (perm. app. denied Oct. 12, 1998).

Thus, we agree that Mr. Taylor's fifteen year sentence for armed robbery has been subsumed by his life sentence due to his status as a habitual criminal. However, we fail to see how that determination helps him or provides the relief he requests. The habitual criminal statutes under which Mr. Taylor was sentenced provided that when a habitual criminal was sentenced as such, "his punishment shall be fixed at life in the penitentiary, and such offender shall not be eligible to parole, nor shall such sentence be reduced for good behavior, for other cause, or by any means . . ." Tenn. Code Ann. § 39-1-806 [repealed].[6] Thus, the habitual criminal's life sentence carries its own "enhancements."

In addition to his life sentence as a habitual criminal, Mr Taylor was also sentenced to two concurrent 30-year sentences, for offenses which were Class X felonies at the time of their commission, and these sentences were to be served consecutive to the life sentence.[7] In his original petition, Mr. Taylor claimed that he was serving an enhanced punishment of a Class X felony improperly because of the procedural issues discussed above. He also claimed that as of the date of his petition he was eligible for parole on the sentence imposed by the court and that he is entitled to the lesser penalty provisions of the law as it would apply without the enhancement factors, and asked that his sentence be re-calculated to reflect such. That request presumes he was serving a Class X sentence, rather than a life sentence as a habitual criminal.

With regard to the issue raised in his amendment, in his brief, Mr. Taylor "avers that when he entered the Tennessee Department of Correction he did not have a fifteen (15) year Class X sentence, his only sentence was Habitual Criminal (life) sentence." He later states that there is no "Class X" enhancement attached to the habitual criminal statute. He finally argues that "the Tennessee Department of Correction had no jurisdiction to alter petitioner's sentence, by attaching Class X enhancements to the life sentence. While we do not disagree, it appears that Mr. Taylor's emphasis on the impropriety of Class X "enhancements" ignores the "enhancements" which accompany a life sentence as a habitual criminal.

Mr. Taylor was sentenced to life imprisonment December 18, 1980, the sentence to be consecutive to his sentence for the previous conviction for which he was on parole when he

_____

[6]Despite this language, a habitual criminal was eligible for parole after serving a term of not less than 30 years. Tenn. Code Ann. § 40-3613 (1975). *See Marsh v. State*, 561 S.W.2d 767, 770 (Tenn. Crim App. 1997) (habitual criminal is eligible for parole after 30 years). In addition, this court has explained that persons sentenced as habitual criminals on the basis of a Class X felonies committed before December 11, 1985, became eligible to earn sentence reduction credits, upon signing a waiver under Tenn. Code Ann. § 41-21-236. *Wilson v. Department of Correction*, No. 01A01-9806-CH-00302, 1999 WL 652016 at *1-2 (Tenn. Ct. App. Aug. 27, 1999).

[7]All three of the sentences resulting from the crimes committed by Mr. Taylor on February 22, 1980, while he was on parole, were to be served after completion of the remainder of his previously-imposed sentences.

committed these offenses. He is now serving his life sentence as a habitual criminal, and has not begun his Class X felony sentences for aggravated kidnaping.[8] Therefore, he is correct that no Class X enhancements are applicable to his current sentence; however, the enhancements attached to a life sentence as a habitual criminal are applicable to it. It is unclear that the Department has applied any Class X felony enhancements to him to his detriment since he is serving an enhanced life sentence. Mr. Taylor has failed to allege any specific actions or consequences of the Department's alleged application of "Class X" enhancements to him.

The Department has not addressed this issue, as Mr. Taylor points out. Included in the record is a TOMIS Offender Sentence Letter prepared by the Department but filed by Mr. Taylor. That letter appears to list his armed robbery conviction twice, once showing a Class X felony status, and once showing a Habitual Criminal status. The Department appears to have credited him with sentence reduction credits under both. However, nothing in the record indicates that Mr. Taylor's release eligibility date or other incident of his sentence has been negatively impacted by the Department's records or sentence calculation. He has been credited with various sentence credits on his life sentence and has not alleged any miscalculation of those credits.

Therefore, we affirm the trial court's dismissal of his petition for declaratory judgment. Costs of this appeal are taxed to the appellant, Clifford Taylor.

_____
PATRICIA J. COTTRELL, JUDGE

---

[8] At the time of Mr. Taylor's offenses, sentences consecutive to a life sentence began after thirty years. *Howell v. State*, 569 S.W.2d 428 (Tenn. 1978).