BENNIE R. CRAWFORD, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.
—469 S.W.2d 524.

March 25, 1971.

Certiorari Denied by Supreme Court July 6, 1971.

Russell X. Thompson, Memphis, for plaintiff in error.

David M. Pack, Attorney General, Everett H. Falk, Assistant Attorney General, Nashville, Billy F. Gray, Assistant District Attorney General, Memphis, for defendant in error.

OLIVER, J. Upon his third conviction in the Criminal Court of Shelby County for operating a motor vehicle upon a public highway or street while under the influence

of an intoxicant, Crawford was sentenced to pay a fine of $1000 and to imprisonment in the County Workhouse for six months, which was the verdict of the jury pursuant to motion seasonably made by the defendant that, in event of conviction, the jury should assess all punishment—both as to fine and imprisonment. (T.C.A. sec. 40-2704). Unsuccessful in his motion for a new trial, the defendant has duly perfected his appeal in the nature of a writ of error to this Court.

At the outset it is appropriate to note that the indictment is in two counts, the first charging the defendant with driving a motor vehicle on a Memphis street while intoxicated on February 14, 1968, and the second count, prepared upon a separate page, charging that in two specified and described cases he had been convicted previously of the same offense in the Criminal Court of Shelby County. The trial court conducted a dual-stage trial of this case in exact conformity with the procedure enunciated by our Supreme Court in such cases as Frost v. State, 203 Tenn. 549, 314 S.W.2d 33 and Harrison v. State, 217 Tenn. 31, 394 S.W.2d 713.

That is, in the first stage of such a case as this the jury should be permitted only to determine the question of guilt or innocence of the principal offense charged in the first count of the indictment. If the jury finds the defendant guilty under the first count, then, and only then, is it proper to present to the jury the indictment count delineating the previous like convictions and present evidence establishing them for the consideration of the jury in fixing punishment for the principal crime charged in the first count of the indictment. This proce-

dure fairly implements the provisions of T.C.A. sec. 59-1035 that in drunk driving cases punishment for the principal crime charged in the indictment may be increased upon charge and proof showing that it is the second or third or subsequent offense.

In this case, at the conclusion of all the proof with reference to the offense charged in the first count, and after arguments and the charge of the court, the jury returned a verdict finding the defendant guilty of that offense. The second stage of the trial was conducted the following day. The second count of the indictment was then read to the jury, defense counsel stipulated in open court that the defendant was convicted on the two previous occasions charged in the second count, evidence of those two previous like convictions was introduced by the State through the testimony of a Shelby County Deputy Criminal Court Clerk, counsel presented their arguments and the court gave the jury further appropriate instructions. After deliberation, the jury rendered its verdict specifically finding the defendant "guilty as a third offender" and fixed his punishment as above indicated. The trial court entered judgment accordingly.

 As he did in his motion for a new trial, the defendant challenges the sufficiency of the evidence to warrant and sustain the verdict of the jury upon the first count of the indictment. The law is well settled in this State, and has been reiterated in numerous cases, that a guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. Such a verdict removes the presumption of the

innocence of the accused which stands as a witness for him until he is convicted, and raises a presumption of his guilt upon appeal, and he has the burden upon appeal of showing that the evidence preponderates against the verdict and in favor of his innocence. Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, Tenn.Cr.App., 425 S.W.2d 799; Brown v. State, Tenn.Cr.App., 441 S.W.2d 485.

We summarize the material evidence obviously accredited by the jury. About 9:45 a.m. on February 14, 1968, responding routinely to a radio broadcast from Memphis Police Headquarters, two Memphis police officers on patrol proceeded to Airways Street where they observed the defendant driving his automobile astride the raised neutral or median strip located between the north-bound and south-bound traffic lanes. When the officers stopped the car, they found that the defendant was so under the influence of an intoxicant that they had to help him out of his car. After he was fully advised concerning his constitutional rights, he simply said, ''You've got me, Man, now.'' His eyes were red, his speech was impaired, he had to be helped into the police car, and was ''very happy,'' ''just a happy drunk.'' At police headquarters he was given a routine physical coordination test; he was unsteady on his feet in the walking test and appeared confused and didn't know his right from his left, could not stand steady with his eyes closed nor find the end of his nose with the tip of his index finger. When he came to the intoximeter test, in which the subject rinses his mouth with cold water and then blows into an instrument to inflate balloons, ''he attempted to inflate the instru-

ment; he couldn't inflate it properly. He couldn't get enough air into it and when he had to start all over again, he decided that he didn't want to take it''; and at one point in the procedure he attempted to shift his position in a chair and fell out of it onto the floor.

The defendant testified that he had been a professional musician in the entertainment field for 20 years and travels widely in the pursuit of his occupation; that he had a glass of beer at the Playboy Lounge about 11:30 the night before and two drinks of Scotch whiskey between 3:00 a.m. and 7:30 a.m. the morning of his arrest at the apartment of his friend, Memphis Policeman Ernie Seyborn, where he and James L. Harbet were invited for breakfast at a chance meeting with Seyborn in another tavern; that he was not under the influence of an intoxicant; that the traffic was heavy and it was a foggy morning and he got on the median strip only momentarily as the officers approached from the opposite direction and got off of it immediately; that the arresting officer advised him of his constitutional rights; that the officers did not have to help him out of his car, and that he got out and walked to the police car; and that at police headquarters he was treated like a gentleman, passed all the coordination tests but did not attempt to take the intoximeter test and did not fall out of a chair.

James L. Harbet, a teacher in the Gary, Indiana Public School System and who described the defendant as his best friend, generally corroborated him with respect to their night on the town and the amount of alcohol consumed by the defendant and the details of the arrest, and gave it as his opinion that the defendant was not under

the influence of an intoxicant. Officer Seyborn testified that he met the defendant and Harbet at Woody's Lounge and that he and they and two or three others went to his apartment about 1:00 a.m. on February 14th for breakfast; that he had a fifth of Scotch and the defendant drank some of it, and that ''all of us were drinking''; that he did not know how much the defendant and Harbet drank, and that they left his apartment about 2:00 a.m.

Considered in the light of the above-stated rules governing appellate review in criminal cases, by which we are bound, manifestly the defendant has failed to carry his burden of demonstrating here that the evidence preponderates against the verdict and in favor of his innocence.

The defendant also urges upon us here, as he did in his new trial motion, that his rights under the federal and state constitutions were violated prejudicially when the arresting police officer testified that in the police radio broadcast the dispatcher indicated that the described car was apparently being operated by a drunk driver. The trial court immediately sustained defense counsel's objection to that statement as being hearsay, and instructed the jury not to consider it for any purpose. In our opinion, this infraction of the hearsay evidence rule was a relatively minor error and rendered innocuous by the prompt action of the trial judge. Moreover, the established fact remains, as found by the jury, that the defendant was operating his automobile while intoxicated when he was arrested.

150

■ Equally baseless is the defendant's complaint that his constitutional rights were trenched upon by the testimony of the officer at police headquarters who conducted the coordination tests, to the effect that the defendant decided he did not want to submit to the intoximeter test. In the first place, defense counsel interposed no objection to that testimony. No principle of law is more firmly established than that when no objection to offered testimony or evidence is interposed, it may properly be considered and given its natural probative effect as if it were in law admissible. This Court will not consider an Assignment of Error based on the admission or exclusion of evidence unless timely objection and exception was made in the trial court so as to give that court opportunity to make correction. Hancock v. State, Tenn. Cr. App., 430 S.W.2d 892.

Unquestionably, the rule requiring contemporaneous objection to the introduction of illegal evidence clearly serves a legitimate state interest. Prompt objection apprises the trial judge of the basis therefor, and gives the court the opportunity to conduct the trial without using the tainted evidence. If the objection is well taken, the evidence is excluded from the consideration of the jury, thus avoiding possible reversal and a new trial and greatly promoting and contributing to the orderly conduct of litigation. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408.

Moreover, in this case at the conclusion of the direct examination of the officer who administered the coordination tests, the trial judge gratuitously instructed the jury as follows:

"Gentlemen, the fact that the defendant in this case refused to take the intoximeter test after attempting to blow the balloon up or blow the instrument up * * * you cannot hold that against him for any purpose whatever as to his guilt or innocence."

Apparently the trial court was of opinion that, under the circumstances, such an admonition to the jury was dictated by the provision of T.C.A. sec. 59-1045 prohibiting the administration of tests to determine alcoholic content of a person's blood over his objection. In any event, it must be said that the careful and conscientious trial judge was simply endeavoring to protect the defendant's right to a fair and impartial trial.

█ Finally, likewise untenable is the defendant's Assignment complaining that he was prejudiced when the District Attorney General said in his final argument to the jury: "I can also tell you that this case will probably be tied up in appeals for a year or so, too * * *."

In order to place this statement in its proper perspective, it should be noted that this argument was presented at the conclusion of the second stage of the trial, after the defendant had stipulated in open court that he had been convicted twice previously for drunken driving as charged in the second count of the indictment, and the State had also established those convictions, and the jury had already found the defendant guilty of the principal offense charged in the first count of the indictment. So, only the question of punishment remained for the jury's determination. The record shows that defense counsel in his argument to the jury had referred to the many contracts

the defendant was obligated to fulfill in succeeding months, and implored the jury to spare him from imprisonment and allow him to complete his contractual obligations.

Thus, in fairness it is appropriate that the District Attorney General's statement complained about be viewed in its proper context, which is: "* * * the man may have contracts from now until doomsday, but that's not your concern. I can also tell you that this case will probably be tied up in appeals for a year or so, too. But that is not what we are concerned with here today. We are concerned with whether or not—or what punishment or penalty that you are going to assess the defendant, Bennie R. Crawford. That is it, clear and simple. Now we say you should judge this case without sympathy or prejudice and we are not up here trying to buy sympathy and we are not trying to prejudice you against this defendant."

■ The general test which we must apply when considering alleged improper argument and conduct of prosecution counsel is whether it prejudicially infected the minds of the jury and influenced them in reaching their verdict and thus affected the outcome of the trial. Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237; King v. State, Tenn.Cr.App., 430 S.W.2d 810. We cannot say that the District Attorney General's argument in this case had any such effect upon the jury.

Moreover, this record shows that the trial judge instructed the jury not to consider for any purpose the

District Attorney General's statement pertaining to appeals.

Let the judgment of the trial court be affirmed.

Mitchell and Galbreath, JJ., concur.