**William McKinley O'DEAR, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

Nov. 12, 1974.

Joe Bean, Howard G. Betty, Winchester, Sam R. Raulston, Raulston & Swafford, Jasper, for petitioner.

David M. Pack, Atty. Gen. & Reporter, Weldon B. White, Jr., Asst. Atty. Gen., Nashville, for respondent.

OPINION

COOPER, Justice.

William McKinley O'Dear was tried in the Grundy County Criminal Court in December, 1972, for the alleged murder of Dolphus C. Pickett. The jury found Mr. O'Dear guilty of murder in the first degree and fixed his punishment at twenty years and a day in the State Penitentiary. Sentence was pronounced accordingly. On appeal, the Court of Criminal Appeals affirmed the conviction. A petition for certiorari was filed, raising the same issues considered by the Court of Criminal Appeals. The petition was granted, but for the limited purpose of considering:

"(1) Whether the Attorneys for petitioner were justified in their reliance on the statement provided by the Attorney General; and

(2) Assuming arguendo that reliance was justifiable, what error, if any, was committed since the technical directives of T.C.A. Section 40-2441 were complied with."

Dolphus C. Pickett was killed on June 14, 1972, while sitting in his automobile stopped on King Street near First Street in Monteagle, Tennessee. No weapon of any kind was found in the Pickett automobile.

Petitioner admitted firing the fatal shot, and plead self-defense.

There is evidence in the record of "bad blood" between petitioner and deceased, and that petitioner had threatened, on at least one occasion, to shoot the deceased if he "messed with him."

On the day of the killing, petitioner and the deceased were seen in their respective automobiles stopped on King Street in front of the Baptist Church. Petitioner's automobile was headed in a southerly direction toward Monteagle, while the deceased's automobile was headed in a northerly direction.

James Sampley and his wife drove up behind petitioner's automobile and could see that petitioner and the deceased were engaged in a heated conversation. The Sampleys drove into the churchyard to pass the automobiles. As they passed, the Sampleys heard a gun shot. Mrs. Sampley looked at the stopped automobiles and saw the deceased falling backwards onto the car seat.

Petitioner left the scene immediately, driving his automobile up the hill behind the Sampley automobile. At the first intersection, petitioner turned off King Street toward his home.

The Sampleys went to a nearby market and reported the incident.

Subsequently, petitioner returned to the scene of the shooting, where he was arrested for murder. Petitioner voluntarily made statements to the arresting officers, both on the way to and at the county jail.

T.C.A. Section 40-2441 provides that:

"Whenever a written or oral confession or admission against interest shall have been made before any law enforcement officer or agency in this state by any person charged with any crime, a copy of such confession, or admission against interest, if written, together with a list of the names and addresses of all persons present at the time such confession or admission against interest was made, shall be given to the defendant or his counsel on demand. If such confession or admission against interest was not reduced to writing, then a list of the names and addresses of all persons present at the time the confession or admission against interest was made shall be furnished.

"No confession or admission against interest shall be admitted as evidence in any case unless a copy of the confession or admission against interest and/or list of names and addresses of persons present at the time the confession was

made is furnished as required by this section."

In this case, the attorneys representing petitioner requested the names of witnesses and a copy of any statement made by the petitioner to police officers.

■ In compliance with the motion and T.C.A. Section 40-2441, the attorney general gave petitioner's attorneys a list of witnesses and also the following investigative report:

" 'Trooper James Foxall, Cowan, Tennessee was interviewed by Agent Willingham on June 14, 1972, and can testify to the following: 'On Wednesday, June 14, 1972, around five thirty P.M., he was advised that there had been a shooting on King Street in Monteagle (Grundy County), Tennessee. He went to the scene and saw a Comet automobile with blood all over the entire inside of the car. In a few minutes, he observed Ed Asher and Kense O'Dear riding down the road. He stopped the car and took Mr. O'Dear into custody and charged him with murder.

" 'As he was traveling to the Grundy County jail, O'Dear made a voluntary statement that he had called the Grundy County jail and advised them that he had shot Dolphus Pickett and he further stated that Dolphus had bullied him long enough. No further statements were made in Trooper Foxall's presence.' "

(Trooper Foxall did not see the investigative report filed by Agent Winningham.)

At the trial, Trooper Foxall's testimony was in accord with the above statement. But, in response to a catch-all question by the attorney general if any other statements were made by the petitioner (other than those contained in the statement set out above), Trooper Foxall answered:

"Yes, sir. At the jail an officer at the jail and Sergeant York were standing behind him and I was sitting in front of him at the desk, and he turned around to

Sergeant York and said, 'He's not even dead yet.' And he put his right index finger over his left eye and said, 'I meant to hit him here.' "

Counsel for the petitioner objected on the ground the testimony was not included in the statement provided by the attorney general. Counsel also pointed out that the statement provided by the attorney general certified that "no further statements were made by Mr. O'Dear in Trooper Foxall's presence."

The trial court overruled the objection and permitted Trooper Foxall to relate the statement made by petitioner at the jail.

In concurring in the trial court's action, the Court of Criminal Appeals stated:

"It is argued that statements furnished by the attorney general to defense counsel in response to a motion for discovery under the provision of T.C.A. Section 40–2441 were incomplete and therefore it was error to allow the testimony of Officer Foxall in regard to the statement made by the defendant at the jailhouse. From the statement of the attorney general to the trial judge, it appears that he had not interviewed this witness and did not have prior knowledge of the statement. There was no written confession or admission against interest made by this defendant. All of the statements made by him were made orally in the presence of the police officers who testified as to the substance of those statements. Defense counsel was fully aware of who these witnesses would be. Defendant is certainly not entitled to have this assignment sustained on the basis of surprise. Under the statute he was entitled to no more than a list of the names and addresses of persons present at the time the admission [in question] was made. He had an adequate opportunity to interview these witnesses, and we conclude the assignments cannot be sustained."

We agree basically with the conclusion of the Court of Criminal Appeals on this issue. However, the erroneous and limiting statement in the investigative report has given us much concern, for we see in such action the opportunity for an attorney general or police officer knowingly to mislead counsel for the defendant. But that is not the situation here. The district attorney did not know the investigative report was erroneous, nor is there any showing, or even indication, that the limiting statement was included in the record to mislead counsel for petitioner. Further, the record shows that despite the limiting statement, petitioner's counsel interviewed Troopers York and Foxall. We understand from statements of counsel to the trial court that the interview did not elicit the fact that petitioner had made a statement against interest at the jail, but that can not be attributed to the investigative report, especially where the report did not undertake to relate oral statements made by petitioner to Trooper York or other officers.

Then, too, even if the trial judge had been in error in allowing Trooper Foxall to testify as to admissions against interest by petitioner that were not included in the statement furnished the petitioner, there would still be the question: Did the error operate to the prejudice of the defendant. See Sambolin v. State, 215 Tenn. 569, 387 S.W.2d 817 (1965); Taylor v. State, 477 S.W.2d 765 (Tenn.Cr.App. 1972). In the case at bar, with the alleged erroneous evidence excluded, we have no doubt the jury would have reached the same result.

The judgments of the trial court and the Court of Criminal Appeals are affirmed.

FONES, C. J., and BROCK, HENRY, and HARBISON, JJ., concur.