McArthur MARSH, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Sept. 15, 1977.

Certiorari Denied by Supreme Court Dec. 12, 1977.

Ed Lane, Chattanooga, Tenn., for appellant.

Brooks McLemore, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, Tenn., Gary D. Gerbitz, Dist. Atty. Gen., Jerry S. Sloan and Larry Campbell, Asst. Dist. Attys. Gen., Chattanooga, Tenn., for appellee.

## OPINION

BYERS, Judge.

The Appellant was convicted of the burglary of an automobile for which the jury fixed the punishment at not less than three (3) years nor more than six (6) years and he was also found to be an habitual criminal and was sentenced to life imprisonment.

The Appellant says the in-court identification of him was based on an improper lineup and was not therefore admissible; that the State failed to furnish the names of witnesses present when oral statements were made by the Appellant as required by T.C.A. § 40–2441; that the trial court should have instructed the jury that one convicted of being an habitual criminal could not be paroled or have the sentence suspended; that T.C.A. § 40–2801 et seq., the Habitual Criminal Act, is unconstitutional because it is arbitrarily and capriciously applied; and, he insists that the evidence preponderates against the verdict of the jury.

On February 10, 1976, Steve Beam and his wife, Helen Beam, drove to the Radio Shack located in the Eastgate Shopping Center in Hamilton County. The purpose of the trip was to purchase a resistor, which is a device to eliminate automobile alternator noise on citizen band radios. Beam had installed a CB radio on his vehicle just prior to going to the shopping center. He and his wife entered the Radio Shack and purchased a resistor. As they were returning to their vehicle, they observed someone in-

side their car. The car had been locked by them before they entered the store. Steve Beam approached the vehicle on the driver's side while his wife approached the vehicle on the passenger's side. They observed a black man inside the car removing the CB radio. The man got out of the Beams' vehicle with the radio in his possession, got into a car parked beside the Beam vehicle and drove away. Mrs. Beam wrote down the license number of the vehicle which the man entered and she and her husband returned to the Radio Shack to call the police. There is some confusion whether Mrs. Beam or Mr. Beam talked to the police on the telephone. However, the police received a call and were given a description of the man whom the Beams saw take the radio and a description of the vehicle in which the man drove away. Some 30 or 40 minutes after the police arrived at the shopping center and completed their investigation at the scene, Steve Beam commenced to drive around the streets of Chattanooga in an effort to locate the vehicle he had described to the police. Beam succeeded in this quest when he saw the vehicle drive up to a pool hall on 9th Street. The Appellant entered the pool hall and Beam called the police to report this occurrence. The police came to the pool hall and Beam identified the Appellant as the person who had broken into his vehicle. The Appellant told the officer, in response to a question, he had been driving the car. The police had him drive his car to the police station. After the Appellant was taken to the police station, Mrs. Beam came there and saw the Appellant sitting in a room with a white officer and identified the Appellant as the person whom she had seen in the Beam vehicle at the shopping center.

The issue of the in-court identification and the claim that the evidence preponderates against the verdict are inextricably mingled because the preponderance of the evidence issue depends upon whether there was a proper and sufficient identification of the Appellant as the perpetrator of this crime.

■ The identification of the Appellant by Mr. Beam at the pool hall does not constitute an impermissible lineup so as to make the identification unduly suggestive or give rise to any substantial likelihood of irrepressible misidentification. Mr. Beam's identification of the Appellant was based upon his observation of him at the time the crime was being committed. Further, when he saw the Appellant alight from the vehicle in front of the pool hall he recognized him as the same person. When the police arrived at the pool hall to continue their investigation, the identification of the Appellant by Beam was a reaffirmation of what he had already observed. There was no lineup conducted. There is no showing that the identification by Beam at the pool hall was rigged or planned. The in-court identification of the Appellant by Steve Beam was not improper as this was based on his observation of the Appellant at the time of the commission of the crime and his observation of him at the pool hall shortly thereafter when he located the Appellant on his own initiative. *Rippy v. State,* 550 S.W.2d 636 (Tenn.1977). See also, *Kelley v. State,* 478 S.W.2d 73 (Tenn.Crim.App.1972).

■ The viewing of the Appellant at the jail by Helen Beam is a significantly different set of circumstances. As set out in the resumé of the facts at the beginning of the opinion, Mrs. Beam was taken to the station house where she viewed the Appellant, a black man, who was in a room with only a white police officer. One-to-one lineups are condemned and their use is highly suspect. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Biggers v. Tennessee,* 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968). In the case of *Donnie Russell Bradford v. State,* Court of Criminal Appeals No. 47, filed February 18, 1977 at Knoxville, this Court in an opinion by Judge Daughtrey held that in the absence of imperative circumstances, the presenting of a single suspect to a witness is proscribed. In this case, the reason for not conducting a lineup was because not enough black people could be found to form a lineup. We find this not to be an imperative circumstance. We are reasonably certain a

sufficient number of black people are present in Chattanooga to supply a valid lineup. The showing of the Appellant to Mrs. Beam was improper. However, the proof also shows that Mrs. Beam's in-court identification was based upon her observation at the scene of the crime and not on the improper showup at the police station. Thus, her in-court identification was properly admitted. *Bradford, supra.*

■ In the trial of this case, no issue was raised questioning whether the burglary of the Beam automobile occurred. The automobile was entered and the only issue was whether the Appellant was the perpetrator of the crime. This question of fact was for the jury to determine. The jury determined this adversely to the Appellant. The evidence supports the finding of the jury. The Appellant has failed to show that the evidence preponderates against the verdict. *Webster v. State,* 425 S.W.2d 799 (Tenn. Crim.App.1967).

One of the investigating officers testified that the Appellant said he had been driving the vehicle which was identified by Beam as the one in which the perpetrator of the crime left the Eastgate Shopping Center. The Appellant says the introduction of this statement was contrary to the provisions of T.C.A. § 40–2441.

The Appellant had made a motion requesting copies of any written statements and the substance of any oral statements along with the names of witnesses to whom, or in whose presence, any oral statements had been made. The Appellant's counsel had not been advised of those statements.

■ The statement by the Appellant connecting himself with the vehicle was an integral part of the identification evidence for the jury to consider and it was, as we view the evidence, a statement against interest. The provisions of T.C.A. § 40–2441 are mandatory. The failure to comply with the terms of the statute renders any inculpatory statement inadmissible.

The issue concerning the introduction of the statement thus becomes whether the introduction of the statement was harmless error. We are of the opinion that it was.

■ Steve Beam testified without objection concerning a claim of ownership of the vehicle which he says the Appellant made to the officers. The connection of the Appellant with the vehicle was already before the jury without objection. In addition, the positive identification of the Appellant by Steve and Helen Beam makes it improbable that the jury would have reached a different verdict if the statement had been excluded. *O'Dear v. State,* 516 S.W.2d 622 (Tenn.1974). Further, Appellant did not object to the testimony of the officer at the time it was given. After the State had rested, the Appellant then moved for a mistrial because of the testimony. Counsel did not request the trial court to instruct the jury to disregard the testimony. The failure of the Appellant to object to the evidence when offered, or to request the trial court to withdraw the evidence from the jury's consideration waives any objection to its admission. *Crawford v. State,* 4 Tenn.Cr.App. 142, 469 S.W.2d 524 (1971).

■ The Appellant's complaint that the trial court refused to instruct the jury that under T.C.A. § 40–2806—the Habitual Criminal Act—the Appellant would not be eligible for parole if found to be an habitual criminal is without merit. Whether he would be subject to parole or not would have no bearing on whether he had attained the status of being an habitual criminal. Beyond that, however, the Appellant would be eligible for parole after serving thirty (30) years. T.C.A. § 40–3613.

■ The Appellant says the Habitual Criminal Statute—T.C.A. § 40–2801, *et seq.* —is unconstitutional because it makes no provision for mitigating or aggravating circumstances and because the attorney generals may arbitrarily determine who will be prosecuted under these sections. The Appellant says the statute must meet the same criteria as death penalty statutes in order to meet constitutional muster. We do not agree with this stance. The imposition of a life sentence, although a strict punishment, can hardly be likened to the irretrievable

infliction of death. The constitutionality of this statute has been affirmed by our Supreme Court in numerous cases, among the more recent is the case of *Pearson v. State,* 521 S.W.2d 225 (Tenn.1975).

We are of the further opinion that the claim that the statute gives the district attorney generals arbitrary authority to select those who will be prosecuted as an habitual criminal in violation of the Equal Protection Clause of the Constitution should be rejected. We are aware that many persons who qualify for prosecution under this statute are not prosecuted thereunder. However, it is irrelevant that other persons subject to being thus prosecuted, were not indicted and tried as an habitual criminal. *Brown v. State,* 1 Tenn.Cr.App. 462, 445 S.W.2d 669 (1969).

The judgment of the trial court is affirmed.

O'BRIEN and OLIVER, JJ., concur.