# IN THE CRIMINAL COURT OF APPEALS OF TENNESSEE

## AT JACKSON

MARCH 1997 SESSION



**FILED**

**August 21, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 02C01-9602-CC-00069 |
| | ) | |
| vs. | ) | Hardin County |
| | ) | |
| **JERRY BLAYLOCK**, | ) | Hon. C. Creed McGinley, Judge |
| | ) | |
| Appellant. | ) | (Possession of Controlled |
| | ) | Substances) |
| | ) | |
| | ) | |

FOR THE APPELLANT:

FOR THE APPELLEE:

RICHARD W. DEBERRY (On Appeal)
Assistant Public Defender
24th Judicial District
P.O. Box 663
Camden, TN 38320

JOHN KNOX WALKUP
Attorney General & Reporter

STEPHEN HALE (At Trial)
Attorney At Law
P.O. Box 331
Bolivar, TN 38008

ELLEN H. POLLACK
Assistant Attorney General
450 James Robertson Pkwy.
Nashville, TN 37243-0493

ROBERT RADFORD
District Attorney General
P.O. Box 686
Huntingdon, TN 38344-0686

JOHN OVERTON
Assistant Dist. Attorney General
Main Street
Savannah, TN 38372

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT, JUDGE

OPINION

The defendant, Jerry Blaylock, appeals the conviction and sentence he received in the Circuit Court of Hardin County. The indictment alleges as count (1) possession of cocaine with intent to manufacture, deliver, or sell, a Class B felony, and as count (2) possession of marijuana, a misdemeanor. The jury convicted the defendant on both counts and determined that fines in the amount of $75,000 on count (1) and $1,250 on count (2) were appropriate. After a sentencing hearing, the court imposed the fines and ordered a mid-Range I sentence on count (1) of ten years and the maximum sentence on count (2), eleven months, twenty-nine days, to run concurrently. The trial court declined to order any form of alternative sentencing.

On this appeal, the defendant makes the following arguments:

(1) The evidence is insufficient to support the convictions, especially the felony conviction of possession with intent to deliver cocaine.

(2) The defendant's constitutional rights were violated through the state's use of a peremptory challenge of a juror.

(3) A witness for the state improperly communicated prejudicial hearsay evidence through his testimony.

(4) A law enforcement officer improperly destroyed evidence that may have been exculpative.

(5) The court erred in its use of enhancing factors, its failure to apply mitigating factors, and in its failure to allow alternative sentencing.

After a thorough review of the record on appeal, including a transcript of the evidence presented at the trial and at the sentencing hearing, we conclude that the defendant's appeal is meritless. The judgment of the trial court is affirmed in all respects.

In view of the issues raised, a short statement of the facts of this case is in order. The cocaine charge (count (1)) and the marijuana charge (count (2)) arose from separate incidents. The cocaine arrest occurred on February 6, 1994. Acting on information supplied by various informants, officer Brian Huggins of the 24th Judicial District Drug Task Force, accompanied by a second officer, entered a Savannah apartment during the early morning hours. The tenant-occupant of the apartment, Patrice Irvin, consented to the entry and accompanied the officers whose purpose, as announced to Ms. Irvin, was to locate the defendant and investigate his alleged drug activity. Ms. Irvin showed the officers to a bedroom in the apartment. The officers turned on the lights and found the defendant and a female companion, Cassandra Porter, both unclothed and asleep in the bed. Upon waking, the defendant reached for, and according to at least one of the officers, grabbed a pair of black trousers that was lying near the defendant's side of the bed. The defendant then stated that the pants were not his and threw them aside. There were no other garments present, and the defendant wrapped a towel around himself. Officer Huggins picked up the black trousers, which were accessorized by a belt that bore the name "Jerry," and discovered a rock of crack cocaine. That item became the basis for count (1) in the indictment. According to the toxicologist's testimony, the rock consisted of 6.2 grams of cocaine.

Count (2) arose out of an earlier stop of the defendant's vehicle by Officer Huggins on November 10, 1993. Reacting to an informant's tip, the officer stopped the vehicle driven by the defendant and asked for and received consent to search the automobile. The officer found a small amount of marijuana in the trunk.

The two counts were tried together. In addition to the testimony of Huggins and the officer who assisted in the arrest in the Irvin apartment, Irvin and Porter testified. Irvin confirmed the officers' account of the entry into the apartment and the discovery of the contraband.

Officer Huggins testified that, based upon his experience as a drug enforcement officer, the street value of the large rock found in the defendant's trousers pocket would be in the aggregate $1,500 to $2,500, based upon it being divided into smaller rocks that could be sold as $25, $50, or $100 units. The toxicologist testified that, based upon approximately 1,500 submissions of cocaine which she had tested in the laboratory, the average quantity per submission was .10 gram. At 6.2 grams, the rock submitted to her in the defendant's case was sixty-two times larger than the average rock she typically tests.

Ms. Porter testified as a defense witness that on February 5, 1994, the defendant pawned a television set, raised $250 to $300, and went to Jackson to buy cocaine. She testified she had been a cocaine addict for eight years, the defendant had been and was still her boyfriend, and they smoked crack together every day. She stated that they intended to smoke the crack that the defendant purchased on February 5, that they did smoke crack on that day, but that she had not seen the rock that was found in the pants pocket. She testified that she uses twenty to thirty twenty-dollar rocks per day. At one point she said that the defendant used a like amount, but later in her testimony she denied saying that.

In addition, the defense called a drug rehabilitation counselor who testified that during May and part of June, 1994, the defendant received drug rehabilitation at True Recovery A&D Treatment Center, where the witness worked. He stated the defendant had addictions to marijuana and crack cocaine. He further stated that some crack addicts use five to ten rocks per day. In his opinion, a person could not function after using that much crack.

The evidence reflects that there were no drug paraphernalia found on or about the defendant's person nor in the apartment where he was discovered.

4

Also, a search of his personal effects from the scene revealed no significant amounts of cash.

The trial court conducted a sentencing hearing on September 16, 1994. The presentence report, contained in the technical record submitted by the trial court clerk, reflects that the defendant had a previous conviction record consisting of two misdemeanor convictions for possession of a weapon, a misdemeanor conviction for flight to avoid arrest, a conviction for driving without a valid driver's license, and a conviction for violating the vehicle registration law. The trial court approved the fines as fixed by the jury and imposed concurrent sentences of ten years on count (1) (a Class B felony, Range I) and eleven months, twenty-nine days on Count (2). The ten-year felony sentence is the midpoint of the applicable range of eight to twelve years. The court below enhanced the sentence above the minimum based upon findings that the defendant has a previous history of criminal convictions or criminal behavior and that there were no mitigating factors. The court declined to order any form of alternative sentencing.

## I. Sufficiency of the Evidence.

When an appeal challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); Tenn. R. App. P. 13(e). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835, (Tenn. 1978). This court will not re-weigh the evidence, re-evaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the

5

jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the state and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

A crime may be established by direct evidence, circumstantial evidence, or a combination of the two. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987). Before an accused may be convicted of a criminal offense based upon circumstantial evidence, the facts and the circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." State v. Crawford, 225 Tenn. (3 Pack) 478, 482, 470 S.W.2d 610, 612 (1971). "A web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Id. at 484, 470 S.W.2d at 613.

The offense alleged as count (1) in the indictment is set forth in Tennessee Code Annotated section 39-15-417 (a) (4) (Supp. 1996), whereby it "is an offense for a defendant to knowingly . . . possess a controlled substance with intent to manufacture, deliver or sell such controlled substance." Cocaine is a controlled substance. Tenn. Code Ann. § 39-17-408 (1991). Count (2) indicted the defendant under section 39-17-418 (a), whereby it "is an offense for a person to

6

knowingly possess or casually exchange [marijuana]." Tenn. Code Ann. § 39-17-418 (a), (b) (Supp. 1996).

The evidence is cogent and overwhelming that the defendant possessed controlled substances as alleged in both counts of the indictment. However, the defendant focuses his appellate argument not on proof of possession, but on the sufficiency of proof of his intent to possess cocaine for delivery. Under the Code, simple knowing possession is a Class A misdemeanor, while the crime of which the defendant was convicted, possession with intent to deliver, is a Class B felony. See Tenn. Code Ann. § 39-17-418(a), (c) (Supp. 1996); § 39-17-417(c)(1) (Supp. 1996). Section 39-17-419 provides:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417 (a). Such inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider such inferences along with the nature of the substance possessed when affixing the penalty.

Tenn. Code Ann. § 39-17-419 (1991). The trial court charged the jury with the inference contained in the first sentence of section 39-17-419. The second inference, arising when a small amount of controlled substances is casually exchanged, was not charged. Presumably, this portion of the statute was omitted because there was no proof of any exchange, casual or otherwise.

Applying the appropriate standard of review and assessing the evidence in the light most favorable to the state, we find sufficient evidence justifying any rational trier of fact to conclude beyond a reasonable doubt that the defendant possessed cocaine with intent to deliver the substance. Based upon the amount of cocaine seized--a large amount, according to two experienced witnesses--the state was entitled to the inference set forth in the first sentence of Tennessee

Code Annotated section 39-17-419. While the proof suggests that the defendant had a crack cocaine habit, the proof is lacking as to how prodigious his habit was. The only proof submitted came through the testimony of Ms. Porter. Not only were her statements conflicting, but her testimony was vulnerable to the jury making critical credibility judgments. The defendant did not testify. Being constrained to not reweigh the evidence and not substitute our evidentiary inferences for those made by the jury, we conclude that the defendant has not carried his burden of overcoming on appeal the presumption of guilt that arose upon his conviction in this case.

## II. Constitutional Infringement: Peremptory Juror Challenge Exercised by the State.

During the voir dire of the venire members, one juror, Ms. Stackings, a black female, responded to questions about being acquainted with prospective witnesses by stating that she had played softball in the past with one of the prospective witnesses and that the two were "still friends." When asked if the relationship would cause her to give an inordinate amount of weight to the witness's testimony, Ms. Stackings replied twice, "I don't know, it might." The court then examined Ms. Stackings and determined that she could adequately disregard the personal relationship in considering the facts presented in evidence and declined to excuse her for cause. After the venire was examined, the state peremptorily challenged Ms. Stackings. The trial court called counsel to the bench for a conference out of the hearing of the prospective jurors. The judge noted the fact that Ms. Stackings is black and that the defendant is black and inquired if the district attorney had a race-neutral reason for challenging this juror. The district attorney said, "She is a friend of a person who may testify." The district attorney further stated that while the witness might not be used, she was under subpoena. The defense objected to the use of this challenge, but the trial court overruled the objection and ordered the jury selection to be resumed.

In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the state's use of peremptory challenges in the jury selection process to intentionally exclude jurors of the defendant's race violates his right to equal protection under the Fourteenth Amendment to the U.S. Constitution. A prima facie case of purposeful discrimination could be established by the defendant showing that the defendant was a member of a "cognizable racial group," that the state exercised its challenges to exclude members of the defendant's race, and that all of the relevant circumstances raised an inference that the state used the peremptory challenge to exclude potential jurors because of their race. 476 U.S. at 96, 106 S.Ct. at 1723. If the defendant is able to establish a prima facie case of intentional discrimination against prospective jurors from his own race, the state must then show there was a race-neutral reason for the challenge(s). 476 U.S. at 97, 106 S.Ct. at 1723. The explanation does not have to rise to the level justifying a challenge for cause. In determining the issue, the trial court examines the "totality of the relevant facts." State v. Bell, 759 S.W.2d 651, 653 (Tenn. 1988). Such facts may include the number of members of the defendant's race that were excluded through the state's challenge, but see State v. Brown, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (cautioning that numbers alone are not conclusive), whether the state failed to exhaust its peremptory challenges while leaving members of the defendant's race on the jury panel, State v. Butler, 795 S.W.2d 680, 687 (Tenn. Crim. App. 1990), or whether the challenged venire members exhibited or acknowledged some race-neutral attitude or relationship so that the state was justified in fearing his or her antipathy to the prosecution. Id.; State v. Smith, 893 S.W.2d 908, 914 (Tenn. 1994); Brown, 915 S.W.2d at 9. However, we point out that the exercise of "even one peremptory challenge in a purposefully discriminatory manner would violate equal protection." State v. Ellison, 841 S.W.2d 824, 827 (Tenn. 1992). In passing, we note that in 1991 the United States Supreme Court modified Batson by deleting the requirement that the defendant and the wrongfully excluded jurors must be of the same race. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed. 2d 411 (1991). In Georgia v.

9

McCollum, 505 U.S. 42, 112 S.Ct. 2348. 120 L.Ed.2d 33 (1992), the Supreme Court further amplified Batson by requiring that the defendant's peremptory challenges be subject to equal protection scrutiny.

On appellate review of the trial court's findings regarding the Batson issue, we "cannot substitute our judgment for that of the trial court or declare error absent a finding that the trial judge abused his or her discretion." State v. Matthew L. Moates, No. 03C01-9610-CR-00383, slip op. at 5 (Tenn. Crim. App., Knoxville, June 24, 1997).

Guided by the foregoing principles, we find no abuse of discretion in the trial court's ruling that no purposeful discrimination occurred. Indeed, the record fully supports a finding that, not only was the state's single challenge of a black juror based on a race-neutral factor, but the defendant failed to establish even a prima facie case of purposeful discrimination.

### III. Hearsay.

During the state's direct examination of Officer Huggins, the witness began to describe the information given to him by an informant about the defendant's alleged drug sales. Defense counsel interposed a hearsay objection which was sustained, and the trial court announced that the witness may not "state what someone else told him." Later in his testimony, Officer Huggins was asked how he came into contact with Patrice Irvin. He responded, "She was seen in the vehicle that the informants had told me that Mr. Blaylock would be in, that he was selling crack out of." A further objection was made and was sustained, but the trial court gave no admonitory or limiting instructions to the jury.

The state argues that the reference to the defendant selling drugs was not hearsay because it was not offered to prove the truth of the matter asserted by

10

the absent declarant, citing <u>State v. Caughron</u>, 855 S.W.2d 526 (Tenn. 1993).  <u>See</u> Tenn. R. Evid. 801(c), 802.  The difficulty with the state's argument is that there was no other reason for offering the statement other than to suggest that the defendant had been selling crack from a vehicle.  <u>See</u> Neil P. Cohen, et al, <u>Tennessee Law of Evidence</u> § 801.3 (3d ed. 1995).  If even relevant to the question being answered, the comment was gratuitous, and we must bear in mind that the person testifying was the prosecuting officer.  There was no other relevant reason for the offered information except to show that the defendant sold crack from this vehicle, and for a such a purpose, the evidence depended upon the credibility and/or accuracy of the absent declarant.

Accordingly, we conclude that the comment was objectionable hearsay, but we further hold that the injection of this comment was harmless error. The defense elicited information from this witness that, on different occasions when the defendant came to Savannah, the officer had received fifty to sixty calls from persons who claimed that the defendant was dealing in drugs.  Even though the witness acknowledged that he had never effected a "buy" from the defendant and had obtained no other proof of the defendant selling drugs, the infusion of the volume of informants' tips tends to overwhelm and minimalize the hearsay statement, relegating the admission of the statement to harmless error.  Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).  <u>See</u> <u>e.g.</u>, <u>Caughron</u>, 855 S.W.2d 526. <u>State v. Summerall</u>, 926 S.W.2d 272, 278 (Tenn. Crim. App. 1995); <u>Marsh v. State</u>, 561 S.W.2d 767 (Tenn. Crim. App. 1977); <u>Snowball v. State</u>, 477 S.W.2d 240 (Tenn. Crim. App. 1971).  Furthermore, we observe that, in the same cross-examination that elicited the fact of a large number of informant tips, defense counsel was effective in extracting the witness's admission that no proof of any actual sale of drugs had been obtained, despite all of the informant activity and the intense investigation of the defendant that had been ongoing for some eight months.  The record reflects a palpable suggestion that the informants' communications were contrived, or at least unreliable, thereby diminishing the

11

impact of the insertion of inadmissible hearsay evidence. Accordingly, the issue is meritless.

## IV. Destruction of Exculpatory Evidence.

The defendant asserts that he was prejudiced by the destruction of audio tapes which may have preserved the defendant's statements that he did not sell drugs, allegedly made in response to an undercover solicitation to buy drugs from him. Officer Huggins admitted that attempts had been made to equip informants/undercover-operatives with tape recorders in order to record a sale of drugs by the defendant to an informant/operative. However, the record does not reflect that any recording of the defendant was ever made.[1] Thus, we resolve the issue by concluding there was no factual basis in the record for finding that the state failed to disclose or destroyed exculpative evidence.

## V. Sentencing.

The defendant complains that the trial court improperly determined the length of this sentence and failed to grant alternative sentencing.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d) (1990). This presumption is "conditioned upon the

---

[1]Officer Huggins acknowledged at one point in cross examination that, during the operation, conversations were recorded, but he then testified, "There were no transactions on those tapes." When asked if the tapes contained statements wherein the defendant said, "I don't sell drugs," the officer stated, "No sir," and then the officer testified there were no conversations with the defendant on any of the tapes. The officer indicated that any tapes that had been used to try to ensnare the defendant in a drug sale had "probably" been destroyed. The matter was not further pursued, and no proof concerning the existence and/or destruction of the tapes was tendered by either party throughout the trial or at the hearing on the motion for new trial.

affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. at 169. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In the absence of enhancement and mitigating factors, the presumptive length of sentence of a Class B, C, D, or E felony is the minimum sentence in the statutory range while the presumptive length of sentence for a Class A felony is the midpoint in the statutory range. Tenn. Code Ann. §40-35-210(c) (Supp. 1996). Where one or more enhancement factors and no mitigating factors exist, the trial court may sentence above the presumptive sentence but still within the range. Id. §40-35-210(d). Where both enhancement and mitigating factors apply, the trial court must start at the minimum sentence, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Id. §40-35-210(e). The weight afforded an enhancement or mitigating factor is left to the discretion of the trial court so long as the trial court complies with the purposes and principles of the Tennessee Criminal Sentencing Reform Act of 1989 and its findings are supported by the record. State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995).

In making its sentencing determination, the trial court, at the "conclusion of the sentencing hearing," determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing;

(2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternative; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §40-35-210(a), (b) (Supp. 1996); Tenn. Code Ann. §40-35-103(5) (1990); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

In the case now before us, the trial judge placed of record extensive findings of fact and demonstrated that he understood, reviewed, and considered the applicable sentencing principles. The sentencing determinations, therefore, are accompanied by the presumption of correctness.

Applying the principles of sentencing with the presumption of correctness, the length of each sentence is fully supported in the record. The trial court's reliance upon the previous history of criminal convictions or criminal behavior is warranted.[2] See Tenn. Code Ann. § 40-35-114(1) (Supp. 1996). The trial court

_____

[2]As pointed out above, the pre-sentence report, which contains information about the defendant's previous criminal convictions, is found in the technical record as prepared and certified by the trial court clerk. The copy included in the record bears a facsimile of the clerk's filing stamp (indicating that the original was filed with the clerk on September 9, 1994), but the document bears no notation that it was received by the court as an exhibit to the sentencing hearing. In the transcript of the sentencing hearing, the trial court referred to the pre-sentence report and stated, "It will be considered then as amended and corrected." However, it was not exhibited to the sentencing hearing. There was no objection to the procedure nor to the ultimate use of the report. Within the context of the proceeding in this case, the trial court received the report, if not by stipulation, then by tacit acceptance by both sides, without objection. Furthermore, we note that, whether the report's admissibility is stipulated or not, the court's consideration of the report -- and hence the court's receipt of the report -- is mandated by Tennessee Code Annotated section 40-35-210(b) (2) (1990). Thus, the defendant does not and could not complain of the use of the report.

The issue that trial courts should take care to address, however, is the organization of the sentencing record for appellate review. An appellate court must be able to identify in the record the same document upon which the trial court relied. Even though a report in this case may have been a de facto exhibit, amounting to evidence submitted on behalf of the state, no report was specifically identified and authenticated in the record by the trial court. For situations of this type, the following well-reasoned rule was developed:

14

was justifiably concerned about the dangerous combination of drug trafficking and going armed. Clearly, the trial judge determined that the record of prior convictions for weapons offenses exacerbated the drug offense in the case under review, causing the trial court to give controlling weight to this enhancement factor. See Hayes, 899 S.W.2d at 185. We concur.

The defendant argues on appeal that the trial court should have considered and applied the statutory mitigating factor that the criminal conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1) (1990). However, had there been any error committed in failing to use this mitigating factor, it would be harmless based upon the weight justifiably accorded to the applicable enhancement factor.[3] Tenn. R. App. P. 36(b); Tenn. R. Crim. P.

---

> Before an exhibit may be considered by this court, it must have been (a) received into evidence, (b) marked by the trial judge, clerk or court reporter as having been received into evidence as an exhibit, (c) authenticated by the trial judge, and (d) included in the transcript of the evidence transmitted to this court.

State v. Cooper, 736 S.W.2d 125, 131 (Tenn. Crim. App. 1987) (emphasis added). See Tenn. R. App. P. 13(c). See also State v. Richard Douglas Lowery, No. 03C01-9604-CC-00146, slip op. at 9-10 (Tenn. Crim. App., Knoxville, May 19, 1997) (rule applied to a "criminal history report" in the context of sentencing hearing). Under this rule a pre-sentence report filed only with the clerk and found only in the technical record is not in evidence. As pointed out above, the report in the case now before us may have been substantially "received into evidence as an exhibit," but "authenticated by the trial judge" as a matter of record it was not. (The technical record, where the ostensible report appears in this case, is certified by the court clerk, not authenticated by the trial judge. Compare Tenn. R. App. P. 24(a) (1) with Tenn. R. App. P. 24(f)). Sentencing courts should take care to assure that the pre-sentence report is authenticated by the judge as evidence received in the sentencing hearing.

While this issue is worthy of amplification for the sake of sentencing by courts in the future, we are not concerned about the effect of the lack of authentication or identification of the exhibit in this case. First, the issue was not raised in the trial court nor on appeal, and accordingly, it is waived. Tenn. R. App. P. 13(b), 24(b), 36(a); Tenn. R. Ct. Crim. App. 10(b). Secondly, the prior convictions that were utilized by the trial court in sentencing the defendant, being two convictions involving the carrying of weapons, and a conviction for evading arrest were acknowledged by the defendant when he testified at the sentencing hearing. Under these facts any error in not authenticating the report as evidence is harmless. Tenn. R. App. P. 36(b); Tenn. R. Crim. App. 52(a).

[3]We note, for example, that in State v Dondi B. Dolan, No. 03C01-9101-CR-283 (Tenn. Crim. App., Knoxville, March 25, 1992), this court was willing to accept the trial court's application of mitigating factor (1) where the defendant sold 1.5 grams of cocaine. However, in Dolan we affirmed the trial court's determination that the enhancement factors outweighed this mitigating factor,

52(a).

Finally, we examine the refusal of the trial court to allow alternative sentencing in this case.[4] Under the Tennessee Sentencing Reform Act of 1989, a defendant who is "an especially mitigated or standard offender convicted of a Class C, D, or E felony," and who has not been convicted of "committing the most severe offenses, possessing [a] criminal histor[y] evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts of rehabilitation," is presumed to be a favorable candidate for alternative sentencing options, "in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(5), (6) (Supp. 1996). A defendant is eligible for probation, a particular alternative sentencing option, when the sentence "actually imposed . . . is eight (8) years or less . . . ." Tenn. Code Ann. § 40-35-303(a) (Supp. 1996) (unless the defendant is convicted of aggravated forms of kidnapping, robbery, child abuse, or sexual battery or certain drug offenses not applicable in the case sub judice).

The defendant was convicted of a Class B felony and received a sentence of ten years. He is neither eligible for probation nor is he presumed to be a favorable candidate for alternative sentencing. The record reflects the trial court was guided by the principles of sentencing and considered alternative sentencing,

_____

and likewise in the case now before us, the enhancement factor so clearly outweighs any possible benefit to the defendant of applying mitigating factor (1), that we do not feel constrained to determine the applicability of this mitigating factor to the defendant's possession of 6.2 grams of cocaine. This conclusion is further facilitated by the fact that neither party developed the mitigation issue in the briefs filed on appeal.

[4]Tennessee Code Annotated section 40-35-302(d) provides that, in imposing a misdemeanor sentence, "the court shall fix a percentage of the sentence which the defendant shall serve." Tenn. Code Ann. § 40-35-302(d) (Supp. 1996) (emphasis added). (After serving the required percentage, the prisoner is eligible for work release, furlough, or other rehabilitative programs.) The maximum percentage that may be established is 75% (except in certain cases not applicable here). "If no percentage is expressed in the judgment, the percentage shall be considered zero percent (0%)." In the case now before us, the sentencing order specifies no percentage. With respect to the misdemeanor sentence, the "administrative authority" has the discretionary authority to "place the defendant in [rehabilitative] programs as provided by law." Id. However, the imposition of concurrent sentences renders the zero percentage service of the misdemeanor sentence meaningless.

16

and that is all that we can require.  There is no basis in the record for upending the trial court's judgment that alternative sentencing options were not appropriate.  In other words, the defendant has failed to carry his burden of demonstrating that the manner of service of the sentence is improper.  There is no ground for altering or setting aside the sentence as ordered below.

## VI. Conclusion.

The conclusion is that there is no consequential error in the proceedings below, and the judgment of the trial court is in all respects affirmed.

_____
CURWOOD WITT, Judge

CONCUR:


_____
JOE B. JONES, Presiding Judge


_____
GARY R. WADE, Judge

17